UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEGASHAW AYELE, Pro Se,
    Plaintiff,

vs.

U.S. SECURITY ASSOCIATES, INC.,
    Defendants.

Case No.: 05-11273 WGY

**AFFIDAVIT OF SHAY PIKE**

I, Shay Pike, do depose and state the following:

1.    I am employed by the Defendant in the referenced case, U.S. Security Associates, Inc. (U.S. Security or "the Company") as its Operations Manager for the "Boston Region" of the Company. I have been employed by U.S. Security for approximately two years. My responsibilities include hiring, scheduling and overall day-to-day superintendence of the clients served by the Boston Region.

2.    U.S. Security provides security services to it clients. Clients include a wide variety of businesses and facilities, including inside and outside security for office buildings, garages, housing complexes, banks, retail stores and other similar businesses.. The days and hours for which security is to be provided are established by each of our clients.

3.    I am familiar with the Plaintiff Begashaw Ayele, as I interviewed him as part of a hiring process. I have read the Civil Complaint that he has filed against U.S. Security. As set forth in his Complaint, I did interview Mr. Ayele on or about January 5, 2005, at which time he attended a voluntary orientation session, and took associated tests

1

related to that orientation. Two other individuals also attended the orientation on that day, one Black and one Caucasian. I was not familiar with what country any of the individuals came from, including Mr. Ayele. In that regard, of the approximately 130 individuals employed through the Boston Regional office, nearly 50 have resident alien status, and these individuals come from all parts of the world.

4. Like many prospective employees, Mr. Ayele did indicate his preferred shifts, and specifically indicated that he preferred not to work Sundays. This request is quite common, and I made a notation on the application form.

5. On or about January 7, 2005, we received confirmation that Mr. Ayele had passed the security test. Consequently, he was deemed eligible for employment. However, a person does not become employed by the Company until there is an actual client assignment that the individual is engaged to fill. When there is a request from a client to fill an assignment, we will begin to contact prospective candidates -- preferably individuals like Mr. Ayele who already have completed the orientation and passed the related test, and have a completed background check -- to determine their availability and willingness to fill a particular position. If an individual accepts an assignment, he or she comes in to the office, receives a uniform, and fills out the necessary paperwork to become an employee of U.S. Security.

6. In the case of Mr. Ayele, when the Company received a request for security services shortly after we received confirmation that he had passed the test, he was contacted to see if he was interested in the position. While this position did involve weekend (including Sunday) work, as is our regular practice, we will contact individuals even though they might have expressed limitations in the hiring/interviewing process, as

it is our experience that often times these same individuals accept the position when offered. Consequently, Mr. Ayele was contacted to see if he was interested, which he declined, which also is quite common.

7. As noted above and by Mr. Ayele in his Civil Complaint, two other individuals – one Black and one Caucasian – also participated in the orientation and took the related tests on January 5th. The Black individual was offered a position and hired (in the sense of being put into our system as an employee) on or about January 11, 2005, and based on my review of payroll records; he began work at a client site on or about January 14, 2005. This individual worked a shift that including Sunday work. The Caucasian individual was hired on or about January 27, 2005, and was assigned to the same client site as the Black individual, and worked weekends. Both positions require active patrol security, e.g. walking on regular patrols of the garage facility.

8. As of August, 2005, of the approximately 132 individuals employed by U.S. Security through the Boston Region office, 85 are Black. Of the 19 supervisors, 15 are Black. While I do not have access to the precise demographics of the office back in January, 2005, my general recollection is that it was substantially similar. Also, the individual who initially screened Mr. Ayele for prospective employment with the Company is Black.

9. For the record, there are several misstatements made by Mr. Ayele in his Complaint regarding our conversation on January 5th, but for purposes of this Affidavit only I am not responding to them.

Signed under the pains and penalties of perjury this 11 day of August, 2005.

_____
Shay Pike

3