UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEGASHAW AYELE, PRO SE )<br>)<br>Plaintiff )<br>Vs )  CIV. ACTION NO. 05-11273WYG<br>)<br>U.S. SECURITY ASSOCIATES, INC. )<br>)<br>Defendant )<br>) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Defendant U.S Security Associates, Inc. has filed its motion for summary judgment one week after it answered plaintiff's civil complaint. The defendant's summary judgment was only supported by an affidavit from the Operation Manager, Shay Pike and no other evidences has been presented as the motion was filed without the completion of discovery. Plaintiff, therefore, submit the following Opposition based on my personal knowledge as indicated in my testimony. For the purpose of convenience in understanding the plaintiff's position, I have briefly re-stated my version of the fact in the following summary statement as follows.

SUMMARY OF PLAINTIFF'S AFFIDAVIT :

As indicated by the plaintiff's affidavit, I have applied for the Security guard position with the employer on November 23, 2004 and in addition to the cover letter and

1

resume, I have completed employer's job application. In my application I have indicated that I will not work on Sunday due to my religion and any overnight shift for family reason. In the job application the work hours indicated as my first preference was from 3:00pm 11:00pm. I have also discussed this with the Spanish secretary in my brief interview with her just as much as I have explained in my final interview. Throughout the pre-employment process and until I was interviewed by Shay Pike, my contact was with a Spanish secretary and I was not interviewed, or had any other contact with any other person including by a black women whom the employer falsely stated in their argument that I was recruited by her.

On January 4, 2005, I was interviewed by Shay Pike and in the interview I have made it clear that my work hour preference would be 3:00pm-11:00pm (the commonly used second shi work hour by most companies) but Ms. Pike, in addition to the 3:00pm-11:00pm work hour shi had a 4:00- 12:00 midnight shift which I was offered conditionally subject to passing of the company's pre-employment examination, proof of other documents for working in the U.S and attending eight hour orientation about the company's over all policy and business practice. As the interview secession was in progress, I further informed Ms. Pike that the reason why I sough a concierge type job and the reason why I left my former employers was due to my leg problem and the other was due to my legal problem with another company that attempted to force me to work on my religious days. Ms. Pike informed me that the company will not pay me as much as my former employers but somehow, I accepted to take the offer.

Subsequent to the interview (the next day) I and other two candidates (one Black and the other White) were participated in the eight hour orientation secession and took the exam Approximately on or about January 10, 2005 the secretary called me at home and informed me if I could come to the office, took the uniform an start the 11:00pm-7:00am (Saturday and Sunday)

2

but was not able to answer my question why the shift promised to me by Ms. Pike was given t other people. At another time, Ms. Pike informed me that in the interview or my application sl was not informed about my work hour preference and days and, therefore, she can will not hir me for that reason. Unable to believe her reasons, I have requested Ms. Pike to give me the co of my employment application so that I can see whether I have not indicated my work hours a shift preference. Ms. Pike, however was willing to provide me but only if I requested by a written letter. When I did submit two letters of request, I was informed by her latter of Februar 28, 2005 that *"Massachusetts Law does not require that our organization provides you with su copies"*

**PLAINTIFF'S CAUSE OF ACTION:**

1. Plaintiff believed that I was discriminated against on ground of my race/color and national origin in that employer offered the job to other, (not those who took the orientation and examination with me.) None of these candidates are Ethiopian by national origin.

2. Plaintiff was also discriminated against because employer <u>denied</u> me the position having my choice of shift preference but <u>offered</u> the other employees who took exam and orientation having their choice of shift and position preference.

3. Employer also had discriminated/retaliated against plaintiff because previously I have informed the employer that I have involved in a lawsuit previously for religious reason but to mask discrimination they offered me a work shift and days that I can not afford to accept.

4. Further I alleged that employer has discriminated against plaintiff because of perceived disability by violating the federal law enacted in 1990.

**DEFENDAN'S POSITION AGAINST THE CLAIM:**

Defendant U.S. Security Associate, Inc. in a conclusory fashion denied plaintiff's assertion of discrimination and retaliation. While defendant (or the Operation Manager) choose

3

not to challenge plaintiff's assertion of fact as framed by my complaint, counsel also failed to argue plaintiff's retaliation claim. The court, therefore, absent of contrasting testimony or evidence, should deny defendant its request for summary judgment

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the submission of the movant's record indicat That no genuine issue of material fact stand in the way of judgment as a matter of law, Fed. R. Civ. P. 56(c); Anderson vs. Liberty Lobby Inc, 377 U.S. 242, 106 S.Ct. 2503, 91 L. Ed. 2nd, 20: (1996). The party seeking summary judgment has the burden of showing that no such issue of material fact exist. Once this burden is met, the burden shift to the nonmovant to produce evidence that shows genuine issue of material fact still remains. Randall vs. LaSalle Telecom'n. Inc. 876 F. 2nd. 563 (7th Cir. 1989) The nonmovant "may not rest upon mere allegation" but mus set forth specific showing that there is a genuine issue for trial"; Fed. R. Civ. P. 56 (c); see also Celotex Corporation vs. Carett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2nd. 265 (1986). During this process, the party opposing summary judgment must be given the benefit of all favorable inference which can be reasonably drawn from the underlying fact, DeValk Lincoln- Mercury vs. Ford Motors Company, Inc; 811 F. 2nd. 326,329, (7th Cir. (1987). In ruling on summary judgment motion, we must consider the pro se's access to proof, his understanding of the legal issue involved, his ability to express himself and the nature of his claim, Medyan vs. Thompson, 484 F. Supp. 619 at 629. (C.D. ILL. 1980). As the summary standard demand, fact should be taken in light most hospitable to the appellant, indulging all reasonable inference in their favor, see Conword, 171. $F.3^{rd}$. 12, 17, (1st Cir.1999).

4

Applications of these standards to the parties' dispute on this case is appropriate and, therefore, defendant should not be entitled to the grant of summary judgment agains plaintiff.

## ARGUMENT

### I. PLAINTIFF'S TITLE VII DSCRIMINATION CLAIMS SHOULD NOT FAIL BECAUSE A PRIMA FACIE CASE HAS BEEN ESTABLISHED.

As stated in plaintiff's <u>and</u> defendant's respective affidavit, it is *undisputed* that plaintiff is one of the many candidates who took the company's pre-employment orientation ar examination. It is also undisputed that plaintiff had a minority standing and a citizen of the United States. Plaintiff is also of <u>Ethiopian origin*</u>  1/ . It is also undisputed that plaintiff was one of the other two candidates who passed the pre-employment exam and it was also undisput that plaintiff was interviewed by the Operation Manager that reviewed plaintiff's curriculum vitae as well as work experience. It was further undisputed that plaintiff has indicated that my work days not to include Sundays and overnight work hours of any day. Plaintiff also informed the interviewer about my leg problem, the reason why I left my former employers as well as my engagement of a lawsuit against another employer. As a result/despite of all the reasons descrie above, defendant offered me a Saturdays and Sundays overnight work shift believing that their action will mask discrimination played as they please.

---

1/       In her affidavit, the Operation Manager, Ms Shay Pike, denied that she doesn't know the national origin of all her employees/candidates including plaintiff. However, she admitted that out of 13( employees hired  by the company 50 of these employees have resident alien statuses and all came from all over the world. See **Pike's Affidavit ¶3 and 8.** In this regard Ms. Pike is attempting to validate one lie by another since not only she knows my national origin from the document I provided to her but also I have indicated in my interview that I was recently married in my former country and even used that marriage as one of the additional reason that I didn't want to work overnight.

Defendant has argued that the offer of the security guard position to plaintiff satisfy the two elements of the prima facie case of employment discrimination, namely (a) whether plaintiff denial of employment was the result of employer's discriminatory practice (or adverse effect) and (2) whether plaintiff's qualification for the job plays a role to making of adverse decision

The defendant's argument has no merit because plaintiff suffered an adverse decision in the face of my submission of clear and or unambiguous information in my employment application as to my qualification, which undeniably defendant had offered me the job knowin that I will not take it whatsoever. Despite of my indication of such clear information in my interview and employment application, however, the company required me to waste time in proceeding all time consuming pre-employment screening, examination, orientation and even gathering all private information including my school and criminal background. All the information gatherd as part of the pre-employment process has not disqualified me for the job *but my engagement in a law suit with another company that the hiring security firm used as a means to deprive me such employment.* This is **retaliation** in the eyes of the law and defendant has not even argued that portion of the claim as framed in my civil complaint at ¶¶ 9,12. The clear evidence that the employer silently passed without mentioning the "retaliation" claim is because defendant's mention of the issue of retaliation can not be defended as plaintiff was expected to produce enormous evidence to support such a claim. Whatever other or unknown reason defendant have for not arguing the retaliation claim, it, in effect means that it had admitted the plaintiff's claim.

The defendant's argument, therefore, should no be credited simply plaintiff had established the prima face case in that (1) am a minority member, (2) had suffered from

employer's adverse employment decision in that employer offered me that job which I will no take on my religious day as well as discriminated me on ground of my race (Black), national origin (Ethiopian) (3) I was qualified for the job /2 *and* (4) the adverse action occurred under pretext of offering the job for which I have restriction. In view of the facts described in this br therefore, defendant's motion for summary judgment should be denied.

    II.    PLAINTIFF'S DISABILITYDISCRIMINATION CLAIM SHOULD NOT FAIL BECAUSE A PRIMA FACE CASE IS ESTABLISHED.

As is commonly argued by many lawyers, defendant's counsel also advanced the instant defense and stated that "plaintiff has **not even alleged** the existence of disability": (emphasis supplied.) Heavily relied on several standards for a prima face element of discrimination developed by many courts, (which plaintiff agree but not the interpretation and application of <u>all</u> cases as each and every cases are reviewed in its own merit) defendant alleged that : ( 1) plaintiff is not a disabled person within the meaning of federal laws (or is regarded as having a disability), (2) he was able to perform the essential function of the job with or without accommodation and (3) he suffered adverse action in whole or in part becau: of that disability, citing the F<u>eliciano</u> court 160 F. 3rd. at 784. Here the defendant's argument should be negated due to the fact that employer offered me a concierge type job during the interview but later the secretary informed me to take the overnight shift Saturday and Sunday The rational conclusion therefore, is that plaintiff was perceived or regarded as a disabled person because defendant also were aware that I left my former employers for the same reaso explained to the interviewer.

---

    2/    *Defendant attempted to assert the plaintiff's inability to perform the security job which require wa'kii because I was asking a concierge type job. This does not mean that I can not work a job which involve reasorab walking with or without accommodation. This is why I stated in my complaint .... I seek a position "<u>which did n require a lot of walking</u>", see* <u>Plaintiff's Civil Complaint at ¶9</u>.

7

Similarly, the second prong of the prima facie case of discrimination, which is negate by the above footnoted argument at page 7, squarely rest with the same logical conclusion because, plaintiff would have carried the defendant's job assignment had I been offered such in which case I may or may not seek accommodation depending on my evaluation and fee in of my leg pain which may resulting from the frequency, distance and other factors of the tou Defendant, therefore, has no any ground to allege that I was not able to perform the job. Had defendant offered the position sought by plaintiff that does not require a lot of "walking or standing" 3/ not only they proved that plaintiff was capable to perform my job with or without accommodation but also avoided this lawsuit.

In addition to the second prong of a prima facie case (one's ability to perform the essent function of the job with or without accommodation) defendant stated that "…..*plaintiff has at most alleged he has some sort of impairment but not a disability"…. and whether such an impairment "substantially limit" one of the employee's major life activity.*- citing Tardie v. Rehabilitation Hospital of Rhode Island, 168. F. 3rd. 538, 541-42 (1st Cir. 1999.)

As plaintiff understand the decision of the Tadie court, that opinion will not be taken f granted because no one in contemporary social, political or economic context understand wha

---

3/   Since May 2005, plaintiff is working at Logan International Airport- the duty of which include standing the whole shift hours and verifying travel documents and applying other security procedure. Due to same problen my leg, I requested reasonable accommodation to my employer and has been transferred to a less pain-caus position. Employer, therefore, had complied with the law and avoided other legal problem. Here, U.S Secui Associates, Inc. (or the "defendant") even before hiring plaintiff, or understanding my problem or contemplate explore what type accommodation I may or may not seek, conclusively denied plaintiff's employment opportu and denying my persistent leg problem by stating that" **plaintiff has not even alleged that he was disabled, ha record of being disabled, or was regarded as disabled.** See Defd's Memorandum of at **page 10, ¶1.** However, Exhibit **A, B and C** indicated plaintiff would have provided medical record had employer requested during the p employment screening process or after hiring plaintiff.

the exact meaning of "life activity" or "life" itself is. Thus, for example, a military person who ear drum was seriously affected and become nearly-deaf by the sound of explosive may not able to continue serving his country as communications officer in a command center. However he certainly may have the ability to serve in other area that require minimal understanding and ability to community in logistic or clerical task. This person who was *impaired* by the sound of such heave explosive is capable to manage his "major life activity" (working, and working fo living) This person, under no reason on the land can not be said that he is un-disabled and impaired. Because *"impairment is the consequence of injury"* and only need some sort of accommodation to continue his major activity life activity. The same rationale should hold to t plaintiff's claim of perceived disability because, like the military officer mentioned in the example, I can perform the employer's job despite such impairment.

## SUMMARY CONCLUSION

(1) Plaintiff has been *discriminated* by U.S. Security Associate, Inc. on ground of my race (black) national origin (Ethiopia) in that employer offered the job they first promised me in the first place but later offered the job to other class of people who has not taken the orientation or examination with me.

(2) I was also *retaliated* (by denying the security guard position) because employer ware notified that, in the past, I have engaged in a lawsuit against my former employer for not accommodating my request for a Sunday-off due to my religious practice. (Begashaw Ayele vs. Allright Parking Co. inc. Civ. Action no. 96-12201-REK)

(3) Employer also discriminated plaintiff in that they offered the job to the candidates who took the examination and orientation with me because the offer was consister with their preference of work days and hours but that treatment was denied to me. not mine.

(4) Further employer had discriminated against plaintiff in that they intentionally declined to offer e the position I sought because of perceived isability or for having an impairment in the performance of duty.

9

Plaintiff therefore, respectfully deny defendant's motion for summary judgme

and set a time table to continue the discovery process and other proceeding beyond that

Respectfully submitted,

Begashaw Ayele, pro se
261 O'Callaghan Way #816
South Boston, MA 02127
(617) 474-9774

### CSRTIFICATE OF SERVICES

This certfy that the foregoing document titled" Plaintiff's Opposition To the Defendar Motion For Sumary judgment" together with the "parties undisputed statement of Fact": "Plaintiff's Affidavit" in support of the Motion in Opposing to the defendant's Motion Summary Judgment has been sent to defendant's counsel by U.S. Mail postage prepaid to following:

Kenneth M. Bello and/or
Josiah M. Black
BELLO, BLACK & WELSH
535 Boylston Street, suite 1102
Boston, Ma 02116

Dated this the 15th day of September 15, 2005

Sincerely,

Begashaw Ayele

10

**EXHIBIT –**



**Primary Care Team 3**
Boston Medical Center
850 Harrison Ave. ACC-3 Team 3
Boston, MA 02118
617-414-5951
June 22, 2005

To whom it may concern:

BEGASHAW AYELE was seen in the Primary Care Clinic at Boston Medical Center on June 22, 2005 as a new patient. He is currently starting evaluation for upper back pain and right ankle pain. I have referred him for some subspecialty evaluation as well. Please consider allowing him light duty (or duty that allows sitting down) during the process of this evaluation. Thank you.

Sincerely,

Eleanor Paglia MD (23270)

**EXHIBIT –**



Globe Aviation Services Corporation

June 14, 2005

Mr. Begashaw Ayele
261 O'Callahagn Way #816
So. Boston, MA 02127

Dear Mr. Ayele,

Thank you for coming in to see us today. It was very nice to meet you.

I wanted to take this opportunity to recap our discussion, as there were several things you were unsure of, such as what days you were scheduled to work.

- We have requested a fitness for duty evaluation from your treating physician indicating the nature of your medical condition or disability. You told me you have an appointment next week but did not know the day or the time, but that you would call your doctor back to verify the appointment and let us know.
- You agreed it was not in your best interests to return to the ticket reading position until you were evaluated by your physician due the pain and swelling in your legs you were experiencing.
- For the other position of Ramp Agent that you work two days a week at Terminal A, you expressed to me that because you could walk and sit in this position, this job did not cause you any pain, and you would like to return to that job. In our meeting I was able to contact the Globe manager who confirmed your schedule, which I relayed to you as Wednesdays and Fridays, 12:30 p.m. to 9:00 p.m.
  - Subsequent to our meeting, I understand you met with Romana, our Manager in Terminal A who was able to offer you another afternoon shift (Thursdays) for a total of three days a week.
- Unfortunately due to transportation you were not able to accept the position of full time A.M. Ramp Agent that we offered you due to the 4:00 a.m. start time.
- In our sincere interests of finding a full time position for you, we also extended to you the ability to pick up additional shifts by "trading" with other co-workers who wanted time off. This is available to you with the approval of your supervisor (total hours worked in one week not to exceed 40 unless approved by supervisor/manager).
- Your first day back to work is tomorrow, Wednesday, June 15, 2005 at 12:30 p.m.

I thank you again for you time today. I want you to understand how important it is that we receive the requested information from your physician so that we can understand the restrictions of your medical condition and what reasonable accommodations, if any, are possible in order to continue your employment with us, while at the same time maintaining the highest level of service for our customers.

Very truly yours,

*Ellen Hirsch*

Ellen K. Hirsch
Northeast Area Manager

**EXHIBIT --**



Tuesday, November 18, 2002

Sam Davies
Account Manager
Pinkerton Security Co. Inc.
75 Sidney Street
Cambridge, Mass. 02139

Re: Resignation

Dear Sam,

As I have discussed with you earlier, I hereby relinquish my letter of resignation from Pinkerton Security Co. Inc. effective Friday, November 29, 2002 after the end of my work shift at 11:00 pm – all for personal reasons.

As required by the company policy, I will return all company uniforms that I received during the orientation time at 575 Boylston street office in Copley square some times in late October 2002.

If you have any related question concerning my decision to leave Pinkerton, please don't hesitate to contact me at (517) 474-9774 or address any correspondence to Post Office Box No. 190548, Boston, Mass. 02125.

Sincerely,

Begashaw Ayele

CC: Theresa Feeney
    Area Human Resources Manager
    Human Resource Office
    47 Winter Street, 3rd Floor
    Boston, Mass. 02108



October 21, 2002

<u>BY HAND</u>

Sam Davis
Account Manager
Pinkerton Security Co. Inc.
75 Sydney Street
Cambridge, MA. 02139

Subj:- <u>Transfer and/or change of position</u>

Dear Sam,

    I am writing this letter in reference to my previous discussion with you as well as my supervisor (s) as to my current position with Pinkerton Security Company here at 75 Sidney Street, Cambridge, Massachusetts.

    As you may have some recollection from our discussion, I was hired by the company with unambiguous term not to work on Sundays and overnight shifts of any days. Moreover, due to the injuries sustained in my leg since high School time, I have informed my supervisors NOT to work as a patrol or "Rover" which I would have declined to accept such position had I known that the nature of such particular job require walking and/or standing as I have witnessed in the last few weeks. Other than being a rover, I certainly may have other potential that benefit best Pinkerton Security Company if and when necessary accommodation is facilitated to me in this matter.

    For the reason explained above, therefore, I request a change of position from Rover to a front desk service or receptionist position as possible as you can.

Thank you,

Begashaw Ayele

cc: (1) Jeff Maciejowski
       Director of Security
       75 Sydney Street
       Cambridge, Ma. 02139

   (2) File